UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

VICTOR MALLH,

    Plaintiff,                                 CASE NO.:

-VS-

CHARTER COMMUNICATIONS, LLC
d/b/a SPECTRUM,

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiff, VICTOR MALLH, by and through the undersigned counsel, and sues, Defendant, CHARTER COMMUNICATIONS, LLC d/b/a SPECTRUM and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

**INTRODUCTION**

1. The TCPA was enacted to prevent companies like CHARTER COMMUNICATIONS, LLC d/b/a SPECTRUM, (hereinafter "Spectrum" or "Defendant"), from invading American citizens' privacy and prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, –US--, 132 S.Ct. 740, 745, 181 L.Ed.2d 881 (2012).

3. "No one can deny the legitimacy of the state's goal: Preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious. Most members of the

1

public want to limit calls, especially cellphone calls, to family and acquaintances, and to get their political information (not to mention their advertisements) [*6] in other ways." *Patriotic Veterans v. Zoeller*, No. 16-2059, 2017 U.S. App. LEXIS 47, at *5-6 (7th Cir. Jan 3, 2017).

4. "Senator Hollings, the TCPA's sponsor, described these calls as 'the ***1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.,* 746 F. 3d 1242 (11th Cir. 2014).

5. According to the Federal Communications Commission (FCC), "Unwanted calls are far and away the biggest consumer complaint to the FCC with over 200,000 complaints each year – around 60 percent of all the complaints…Some private analyses estimate that U.S. consumers received approximately 2.4 billion robocalls per month in 2016." *The FCC's Push to Combat Robocalls & Spoofing* (website visited on Jan. 2, 2019), https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing.

## JURISDICTION AND VENUE

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See

*Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

8. Venue is appropriate with this Court under 28 U.S.C. § 1391(b)(1), as it is the judicial district in which the Defendant resides.

## FACTUAL ALLEGATIONS

9. Plaintiff is a resident of the State of New York, residing in Astoria, New York.

10. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

11. Defendant is a limited liability company with its principal place of business located at 12405 Powerscourt Drive, St. Louis, MO 63131, and which conducts business in the State of Missouri.

12. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (347) *** - 6564, and was the called party and recipient of Defendant's hereinafter described calls.

13. Defendant placed an exorbitant number of automated calls and text messages to Plaintiff's cellular telephone (347) *** - 6564 for purposes of collecting an alleged debt, customer surveys, and unscheduled equipment installations.

14. On several occasions over approximately the last three (3) years, Plaintiff's instructed Defendant's agents(s) to stop calling his cellular telephone.

15. Upon receipt of the calls from Defendant, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following phone number(s): (800) 892-2253, and when that number is called, an automated message answers "Welcome to Spectrum. This call may be monitored or recorded for quality assurance purposes…."

16. Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

17. Plaintiff will testify that he knew it was an autodialer because of the vast number of calls he received, and because when he answered a call from the Defendant, he would hear an extended pause followed by a beep or "click" before a representative would come on the line.

18. Additionally, on a number of occasions, Plaintiff would answer a call from the Defendant, say "Hello? Hello?" and no one would ever come on the line – indicative of an "abandoned call".

19. Moreover, Defendant placed a substantial number of calls utilizing a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

20. Further, Defendant left at least twenty (20) separate prerecorded voice messages on Plaintiff's voicemail, which often began as follows:

> *"Hello. This is an automated message from Spectrum about an important change in the status of the account belonging to Victor Mallh…"*

21. In or about April of 2018, Plaintiff answered a call from Defendant to his aforementioned cellular telephone number, met with an automated message, held the line and was eventually connected to a live representative, and informed an agent/representative of Defendant that the calls to his cellular phone were harassing, that he was aware of his due date,

he did not need a constant reminder of his financial obligations, and demanded that they cease calling his aforementioned cellular telephone number.

22. During the aforementioned phone conversation in or about April of 2018 with Defendant's agent/representative, Plaintiff unequivocally revoked any express consent Defendant may have had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

23. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

24. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

25. Similarly, on or about May 22, 2018, due to continued automated calls to his aforementioned cellular telephone number from the Defendant, Plaintiff returned a call to Defendant, was eventually connected to a live agent/representative of Defendant named "Alex", was transferred to a separate agent named "Crystal", and informed Defendant that he had previously informed them to remove his number from their call list, instructed Defendant to stop all calls, and notified Defendant that e-mail is the only form of contact Defendant can utilize should Defendant need to reach him.

26. Additionally, on or about October 17, 2018, Plaintiff placed a call to the Defendant to dispute a charge on his bill, was eventually connected to an agent/representative of Defendant named "Blu", provided his aforementioned cellular telephone number for purposes of locating the account, and specifically told "Blu" that Defendant did not have permission to call him and could only contact him by the e-mail address Defendant had on file.

27. Despite this request, Defendant continued to call Plaintiff. The very next day, on or about October 18, 2018, due to the continued automated calls, Plaintiff returned a call to the Defendant, held the line to be connected to an agent/representative of Defendant, was eventually connected to an agent named "Lynette", and explained to "Lynette" that he did not schedule a technician to come to his home, demanded to know why Defendant continued to place automated survey and technician appointment calls to his cell phone, and again demanded that Defendant cease calling his aforementioned cellular telephone number to which "Lynette" apologized and acknowledged that the calls were a "mistake".

28. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff despite the Plaintiff revoking any express consent the Defendant may have had to call his aforementioned cellular telephone number.

29. On at least four (4) separate occasions, Plaintiff has either answered a call from Defendant or returned a call to Defendant regarding his account, held the line to be connected to a live representative, and demanded that Defendant cease placing calls to his aforementioned cellular telephone number.

30. Each of the Plaintiff's requests for the harassment to end was ignored.

31. Defendant has placed approximately one-hundred fifty (150) actionable calls to Plaintiff's aforementioned cellular telephone number in violation of the TCPA.

32. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

33. From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of his cellular telephone line

6

and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's calls.

34. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of his time. For calls he answered, the time he spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications

35. Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go through the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

36. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

37. Each and every call placed without express consent by Defendant to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone and/or network.

38. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular phone and his cellular phone services.

39. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by stress, anxiety, and aggravation.

40. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to Plaintiff's cellular telephone in this case.

41. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Defendant, to remove the number.

42. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they do not wish to be called.

43. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

44. Defendant has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

45. Defendant has had numerous complaints against it from consumers across the country asking to not be called; however, Defendant continues to call these individuals.

46. Defendant's corporate policy provided no means for Plaintiff to have Plaintiff's number removed from Defendant call list.

47. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

48. Not one of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

49. Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation of the TCPA)

50. Plaintiff realleges and incorporates paragraphs one (1) through forty-nine (49) above as if fully set forth herein.

51. Defendant willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Plaintiff did not wish to receive any telephone communication from Defendant, and demanded for the calls to stop.

52. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff, VICTOR MALLH, respectfully demands a trial by jury on all issues so triable and judgment against Defendant, CHARTER COMMUNICATIONS, LLC d/b/a SPECTRUM, for statutory damages, treble damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

Respectfully Submitted,

*/s/ Kelsy Simon Vollmer*

KELSY SIMON VOLLMER, ESQUIRE
Missouri Bar No.:
Devereaux, Stokes, Fernandez & Leonard, P.C
133 South 11th Street, Suite 350
St Louis, MO 63102
Phone: 314-433-9131
Fax: 314-621-5705
Email: kelsy@stltriallawyers.com